IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARCIE COOK**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| | * | CIVIL NO. JKB-20-1877 |
| **HOUSING AUTHORITY OF BALTIMORE CITY**, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiffs, former tenants of a public housing unit owned by Defendant Housing Authority of Baltimore City ("HABC"), brought this suit after a firebombing of their unit resulted in injury and death. Plaintiffs sued HABC and two HABC officials, Executive Director Janet Abrahams and Board Chairman Joseph Lee Smith. (Am. Compl., ECF No. 16.)[1] Plaintiffs allege that HABC, Abrahams, and Smith (collectively "Defendants") acted negligently, breached Plaintiffs' lease and the implied warranty of habitability, and violated federal and state constitutional provisions by not transferring Plaintiffs to a different housing unit after Plaintiffs reported experiencing threats and incidents of violence. (*Id.*) Defendants originally moved to dismiss all of Plaintiffs' claims before Plaintiffs amended their Complaint (First Mot. Dismiss, ECF No. 8), and again moved to dismiss all claims after Plaintiffs amended their Complaint (Mot. Dismiss, ECF No. 20.) Defendants' motions to dismiss are fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md.

---

[1] Plaintiffs also sued the Mayor and City Council of Baltimore, the Baltimore City Department of Housing and Community Development ("HCD"), and HCD Commissioner Michael Braverman. (Am. Compl. ¶¶ 5–9.) However, Plaintiffs have voluntarily dismissed their claims against these Defendants, with this Court's approval. (*See* ECF Nos. 28–29.)

2018). For the reasons set forth below, Defendants' first motion to dismiss is denied as moot and Defendants' second motion to dismiss is granted.

## I.     *Background*[2]

In 2014, Plaintiff Marcie Cook was leasing a HABC-owned rowhome, located at 1233 Greenmount Avenue in Baltimore, where she resided with her minor children M.R. and D.J., as well as Mykia and Micha Pinkney. (Am. Compl. ¶ 10.) In March 2014, the five Plaintiffs began receiving threats of violence from their neighbors, public housing tenants who also leased a home from HABC. (*Id.* ¶¶ 11–13.) Shortly thereafter, "Mykia Pinkney was brutally assaulted with table legs and a handgun" by a burglar in her house. (*Id.* ¶ 14.) Cook asked HABC to move her family, but did not receive a response. (*Id.*) Plaintiffs allegedly continued experiencing "incidents of physical harassment, intimidation, and the vandalizing of Plaintiff Cook's and the other Plaintiffs' personal property" following the burglary. (*Id.* ¶ 16.)

From 2014 through 2017, Cook allegedly "made multiple verbal and written requests to [HABC] for emergency placement in different public housing" units, but HABC did not transfer Plaintiffs. (*Id.* ¶¶ 17–18.) Cook allegedly reported "physical break-ins, threats of imminent harm, and physical assaults" to both the Baltimore Police Department and HABC. (*Id.* ¶ 19.) Cook allegedly informed "Defendants that she felt in danger for her life and those of her children residing at the property," and provided police reports and peace orders to Defendants. (*Id.* ¶¶ 20, 22.) In response, Defendants allegedly failed to "take any action of any kind to protect Plaintiffs." (*Id.* ¶ 22.) On March 16, 2017, Plaintiffs allege that someone shot at Micha Pinkney and D.J. while they were approaching their rowhome. (*Id.* ¶ 23.) Cook allegedly called HABC with repeated requests to be transferred to a different public housing unit, but was not transferred. (*Id.* ¶ 24.)

---

[2] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Plaintiffs. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

On March 18, 2017, the periodic attacks on Plaintiffs culminated in a fire-bombing that left Plaintiffs seriously injured, caused two deaths, and destroyed all of Plaintiffs' personal belongings. (*Id.* ¶¶ 26–29.) In the early hours of that day, Plaintiffs allege that fires erupted on the first, second, and third floors of their rowhome, yet "the sprinkler system did not activate and did not properly perform" and "the fire alarms cut on momentarily then stopped and did not operate properly." (*Id.* ¶¶ 30–31.) Plaintiffs allegedly "suffered smoke inhalation, burns, emotional and physical trauma, and other injuries as a result, and economic damages from loss of their personal property in the fire." (*Id.* ¶ 32.) The Baltimore Police Department allegedly charged Antonio Wright, the same individual who had shot at Pinkney and D.J. two days prior, with arson murder, after an investigation suggested that someone had thrown a Molotov cocktail through Plaintiffs' window. (*Id.* ¶¶ 35–38.)

## II.   Legal Standard

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### *III.   Analysis*

Preliminarily, the Court denies Defendants' first motion to dismiss (ECF No. 8), which is moot because Plaintiffs subsequently filed an Amended Complaint (ECF No. 16). The Court will grant Defendants' second motion to dismiss (ECF No. 20) because Plaintiffs fail to state federal claims, and the Court therefore lacks subject matter jurisdiction over this controversy. The Court sees no reason to depart from its typical procedure, and it will not treat Defendants' motion as a pre-discovery motion for summary judgment, as Defendants have requested.[3] (ECF No. 20). Accordingly, the Court will consider Defendants' motion as a motion to dismiss.

### *A.   Federal Constitutional Claims*

In Count Two of their Amended Complaint, Plaintiffs allege that HABC, Abrahams, and Smith violated the Fourth and Fourteenth Amendments to the U.S. Constitution. The Court will dismiss these claims—which are the only federal claims presented in the Amended Complaint— because they are not sufficiently pleaded. *See Twombly*, 550 U.S. at 570.

#### *1.   Section 1983 Claims Against HABC*

Plaintiffs' § 1983 claim against HABC will be dismissed because Plaintiffs fail to allege the elements of *Monell* liability, as well as the elements of any constitutional claims. Section 1983 applies to municipalities and other local government units, including counties. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Counties may be held liable only when official county policy causes a constitutional tort. *Id.* To state a § 1983 claim against a county, also known as a *Monell* claim, a plaintiff must allege (1) "a constitutional harm that stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom," (2) "facts showing that the policy's creation is fairly attributable to the municipality," and (3) "an affirmative causal

---

[3] The Court is especially disinclined to treat this as a motion for summary judgment because Plaintiffs allege they cannot acquire key evidence without conducting discovery. (*See* ECF No. 30-5).

link between the policy or custom, and the particular injury suffered by the plaintiff." *Wash. v. Balt. Police Dep't*, 457 F. Supp. 3d 520 (D. Md. 2020) (internal quotation marks omitted) (citing *Milligan v. City of Newport News*, 743 F.2d 227 (4th Cir. 1984); *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)).

Plaintiffs assert that HABC "failed to train, supervise or discipline its staff" when it came to responding to Cook's requests to be moved or to receive additional security measures at 1233 Greenmount Avenue. (Am. Compl. ¶¶ 94–98.) They also allege that HABC's employees failed to adhere to the agency's policies for assisting tenants who face emergency conditions. (*Id.* ¶ 98.) In so doing, Plaintiffs fail to plead the required elements of a *Monell* claim. Under *Monell*, a governmental agency may be liable when its policies *cause* constitutional harms, not when its employees allegedly fail to adhere to policies that are constitutionally sound.

Even if Plaintiffs had adequately pleaded the elements of *Monell* liability, they fail to state constitutional claims. Plaintiffs argue that HABC, which allegedly was "deliberately indifferent to requests made by Plaintiff Cook to be moved," violated the Fourth and Fourteenth Amendments. (Am. Compl. ¶¶ 99–100.) Plaintiffs cannot survive a motion to dismiss merely by making conclusory assertions, and the facts they allege do not plausibly state claims under the two constitutional provisions they invoke.

The Constitution's Fourth Amendment, which protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures," is often invoked to challenge the constitutionality of searches and arrests carried out by law enforcement authorities. *See, e.g., Pleasants v. Town of Louisa*, 524 F. App'x 891 (Table) (4th Cir. 2013) (quoting U.S. Const. amend. IV). The Fourth Amendment can also implicate privacy concerns, but does not provide a general right to privacy. *See Katz v. United States*, 389 U.S. 347 (1967) ("[T]he protection of a person's

general right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States."). Plaintiffs make no attempt to explain why the Fourth Amendment is applicable to the facts of this case. HABC's alleged failures to move Plaintiffs, install security equipment, and maintain fire prevention equipment do not involve any government-initiated searches or arrests of any of the Plaintiffs.

Similarly, Plaintiffs fail to explain why the facts alleged in their Amended Complaint fit within the purview of the Fourteenth Amendment. Based on the Amended Complaint, it is unclear which provision of the Fourteenth Amendment Defendants allegedly violated. The Fourteenth Amendment includes an equal protection clause, which was designed "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination," along with a due process clause. *King v. Rubenstein*, 825 F.3d 206, 220, 222 (4th Cir. 2016) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

If Plaintiffs intended to argue that Defendants violated the Fourteenth Amendment's equal protection clause, their claim would not survive dismissal. To state a claim under the equal protection clause, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *King*, 825 F.3d at 220 (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Plaintiffs make no allegations regarding unequal treatment, differential treatment of public housing tenants, or discriminatory intent on the part of HABC.

Similarly, Plaintiffs do not state a claim under the Fourteenth Amendment's due process clause. Plaintiffs entirely fail to state a claim for violations of procedural due process,[4] as they do

---

[4] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal citation omitted).

6

not allege that any of Defendants' procedures violated their constitutional rights. The Amended Complaint's language about deliberate indifference implies that Plaintiffs' claim arises under the Fourteenth Amendment's substantive due process clause. The Supreme Court has stated that "'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,'... or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. Cal.*, 342 U.S. 165, 172 (1952)). According to the Supreme Court, "only the most egregious executive action," such as "conduct deliberately intended to injure in some way unjustifiable by any government interest," would violate substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). "[D]eliberate indifference is egregious enough to state a substantive due process claim in one context, that of deliberate indifference to the medical needs of pretrial detainees." *Id.*

Plaintiffs have not pleaded facts showing—or even alleged—that Defendants behaved unconscionably or deliberately intended to injure them. Plaintiffs fail to explain why the high standard of unconscionability, which is typically reserved for ignoring a detained individual's medical problems, applies to a government agency's decision not to move tenants within a public housing complex. The mere conclusory assertion that Defendants were "deliberately indifferent"—in the absence of factual allegations supporting that conclusion, or explanations as to why this alleged deliberate indifference was unconscionable—cannot insulate this claim from *Twombly*'s pleading standard.

### 2. *Section 1983 Claims Against Abrahams and Smith*

Aside from listing Abrahams and Smith as defendants, Plaintiffs do not provide any specific allegations regarding any conduct of theirs that allegedly violated Plaintiffs' rights. Because Plaintiffs do not allege these defendants took any actions separate from HABC's general

7

actions, Plaintiffs fail to state a § 1983 claim against Abrahams and Smith for the same reason that they fail to state a § 1983 claim against HABC. Moreover, Abrahams and Smith correctly note that governmental officials may invoke a qualified immunity defense. (*See* Mot. Dismiss Mem. Supp. at 29, ECF No. 20-1.) Defendants may invoke this defense, which is designed to protect public officials from becoming embroiled in lawsuits, when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *In re Mills*, 287 F. App'x at 280 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because Plaintiffs have not alleged any specific facts about Abrahams' and Smith's ostensible constitutional violations, the Court cannot conclude that those officials violated clearly established constitutional rights.

Because Plaintiffs fail to state claims under the Fourth and Fourteenth Amendments, Count Two is dismissed with respect to all Defendants.

## B. Lack of Subject Matter Jurisdiction

With the dismissal of Count Two, Plaintiffs' only federal claim, and with all parties' status as citizens of Maryland, (*see* Am. Compl. ¶¶ 1–7), the Court no longer possesses federal question or diversity jurisdiction over this case, and will not exercise supplemental jurisdiction over the remaining state law claims. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, federal courts have "an inherent power to remand [ ] State claims when the federal claims drop out of the case." *Hinson v. Norwest Fin. South Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001).[5]

---

[5] Remanding pendent state law claims is efficient "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 357 (1988).

In case Plaintiffs amend their Complaint, the Court will note that Plaintiffs' remaining claims contain a number of deficiencies, some of which appear more intractable than others. Under Count One, Plaintiffs appear to plausibly allege a negligence claim with respect to Defendants' alleged failures to maintain their sprinklers and fire alarms, but not with respect to Defendants' failure to transfer Plaintiffs to a new public housing unit.[6] As for Count Three, Plaintiffs do not seem to allege the contents of their lease with enough certainty and definiteness to survive dismissal.[7] Plaintiffs have not adequately alleged the notice element of their breach of implied warranty of habitability claim in Count Four.[8] The claims in Count Five might be sufficiently bolstered if Plaintiffs amend Count Two, as Maryland Declaration of Rights claims are typically considered in pari materia with Fourteenth Amendment claims.[9]

---

[6] In their opposition to Defendants' motion to dismiss (ECF No. 30), Plaintiffs cite HABC's Public Housing Admissions & Continued Occupancy Policies, which provide that an "intimidated crime victim . . . may qualify" for a transfer to a different public housing unit. HABC, *Public Housing Admissions & Continued Occupancy Policies* (Mar. 28, 2018), http://www.habc.org/media/1499/habc-public-housing-admissions-continued-occupancy-policies.pdf. Plaintiffs do not allege they fit within the definition of an "intimidated crime victim," or explain how the discretionary language in the policy gives rise to a legal duty to transfer public housing residents.

[7] Under Maryland law, a complaint asserting breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 440 (Md. 2010) (quoting *Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)).

[8] For the purposes of a breach of implied warranty of habitability claim, notice can occur only through certain avenues, and Plaintiffs have not alleged that they provided Defendants with notice of their unsafe environment through any of those avenues. *See* Balt. City Code Pub. Local Law § 9-14.2(a)(3) (emphasis added) (defining "notice" as "a violation notice from the Department of Housing and Community Development or any other municipal or governmental agency, or a letter sent by the tenant or his [or her] agent to the landlord by *certified mail*, or actual notice of the defects or conditions").

[9] See *Littleton v. Swonger*, 502 Fed. App'x 271, 274 (4th Cir. 2012) (explaining that Article 24 of the Maryland Declaration of Rights is "construed in pari materia with the... Fourteenth Amendment"); *King v. State*, 76 A.3d 1035, 1041 (Md. 2013) (explaining that Article 26 has been interpreted by Maryland courts as being in pari materia with the Fourth Amendment).

## IV.     Conclusion

For the foregoing reasons, an order shall enter (1) denying as moot Defendants' First Motion to Dismiss (ECF No. 8); (2) granting Defendants' Second Motion to Dismiss (ECF No. 20); and (3) remanding this case to the Circuit Court for Baltimore City.

DATED this __/__ day of December, 2020.

BY THE COURT:

_/s/ James K. Bredar_

James K. Bredar
Chief Judge